UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10701-GAO

LISA SLAWSBY, individually and on behalf of all others similarly situated,
Plaintiff,

v.

CHAMPION PETFOODS USA, INC and CHAMPION PETFOODS LP,
Defendants.

OPINION AND ORDER
March 27, 2023

O'TOOLE, D.J.

This is a putative consumer class action about pet food. The plaintiff, Lisa Slawsby, brings a variety of Massachusetts state law claims against Champion Petfoods USA, Inc., and its parent company, Champion Petfoods LP, (collectively, "Champion"), alleging that they sell pet foods they have advertised as safe without disclosing that the foods contained some amounts of arsenic, mercury, lead, cadmium, and Bisphenol A (BPA). She brings the suit on behalf of herself and other Massachusetts residents who purchased certain pet foods from Champion between July 2013 and the present. Champion has moved to dismiss the claims under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6).

**I.**     **Factual Background**

The Second Amended Complaint alleges that Champion formulates, manufactures, and markets premium dog and cat foods under the brand names Orijen and Acana. The defendants "have created a niche in the pet food market by claiming that they make 'biologically "appropriate" pet food—as close to what animals would eat in nature as possible—and producing it using fresh, natural ingredients.'" (Second Am. Compl. ¶ 3 (dkt. no. 26).) Specifically, the defendants say that

its product line Orijen "features fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." (Id. ¶ 4.) The food, designed according to cats' and dogs' "evolutionary adaptation to a diet rich and diverse in fresh meat and protein," is an "expression of [the defendants'] biologically appropriate and fresh regional ingredients commitment." (Id.) The product Acana is said to include "richly nourishing meat and protein," made from "poultry, fish and eggs passed fit for human consumption." (Id. ¶ 5.) The food is advertised as including "ingredients we love." (Id. ¶ 6.) Relying on these descriptions, the defendants "charge a premium" for their products. (Id. at ¶ 3.)

The operative complaint alleges that the representations were and are false and misleading because the Champion pet food products are in fact "contaminated" with the heavy metals listed above. The complaint includes two charts listing concentrations of these substances present in twenty-nine of Champion's dog and cat food products. (Id. ¶¶ 8–9.) The complaint refers to a "White Paper" published by Champion in 2017, which acknowledges that Champion's pet food products do include the identified substances. In it, Champion explains that the identified heavy metals in its pet foods were naturally occurring and maintains that the concentrations of the substances fall well below the maximum tolerable limits for pets.

Lisa Slawsby is a dog trainer who, for a period of time, purchased one or two bags per month of the allegedly contaminated food for her dog, her cats, and the dogs she trains and boards. She does not claim that any of the animals were actually injured as a result of consuming the products.[1] Rather, she claims that she herself was injured economically because she paid a

---

[1] She summarily claims her dog "was getting sick" from the foods and "has recovered," but without any details. (Id. ¶ 43.) In particular, she does not explicitly allege that the levels of heavy metals or BPA in the consumed dog food either could or actually did cause the dog to get sick.

2

premium price for the pet foods and would not have purchased them if she had known they contained the objectionable substances.

## II. Discussion

The complaint asserts claims under Massachusetts law for fraud (Count I); fraud by omission (Count II); negligent misrepresentation (Count III); consumer protection violations under Massachusetts General Laws Chapter 93A (Count IV); untrue and misleading advertising (Count V); breach of express and implied warranties (Counts VI & VII); and unjust enrichment (Count VIII).

### A. Counts I–V

Counts I through V allege various fraud-related claims. Slawsby's Chapter 93A claim, perhaps the broadest of the group, is the canary in the coal mine for the plausibility of these claims.

To state a claim under Chapter 93A, a plaintiff must allege that the defendants used "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Where, as here, a consumer pleads a chapter 93A violation under a theory of deception, she must allege not only that a deception occurred,[2] but also that the deception caused some kind of objective consequent injury distinct from the deception itself. See Shaulis v. Nordstrom, Inc., 865 F.3d 1, 7–10 (1st Cir. 2017). Stated differently, a

---

[2] This "deception" claim alone is a dubious contention in this case. See, e.g., Song v. Champion Petfoods USA, Inc., 27 F.4th 1339, 1346 (8th Cir. 2022) ("We conclude that the district court properly dismissed Plaintiffs' omission-based claims because 'none of Champion's packaging statements are deceptive or misleading, and thus none require corrective disclosures.'"); Renfro v. Champion Petfoods USA, Inc, 25 F.4th 1293, 1297 (10th Cir. 2022) ("We agree with the district court that Plaintiffs' claims fail to allege materially false or misleading statements on Champion's packaging because the phrases fail to deceive or mislead reasonable consumers on any material fact.").

plaintiff must establish that she was denied some tangible benefit of the bargain, as opposed to a subjectively perceived or never-realized injury. Id. at 12 (quoting Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 888 (Mass. 2008)).

Slawsby's theory of injury is economic. She alleges (1) that she would not have purchased the pet foods had she known that they contained heavy metals and BPA, and (2) that she was injured by paying a premium for pet foods "that have no or *de minimis* value" based on their presence. (See, e.g., Second Am. Compl. ¶ 45.)

The complaint refers to a "White Paper" issued by Champion, and Champion has attached a copy of it to its memorandum in support of its motion to dismiss. (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss Second Am. Class Action Compl., Ex. A) (dkt. no. 32-1).) The document includes a comparison of the levels of the heavy metals found in the Champion products with the respective ranges deemed safe in foods by the United States Food and Drug Administration or the National Research Council.

Slawsby's allegations are similar to those pressed by the plaintiff in the instructive case of Shaulis v. Nordstrom, Inc., cited above. In that case, the plaintiff purchased a sweater for $49.97 at Nordstrom Rack, allegedly under the impression that she was saving 77% on her purchase from the price that might be charged for the sweater without a discount. The Court of Appeals noted that the fact that the plaintiff may have been manipulated into purchasing the sweater because she believed she was getting a significant bargain did not necessarily mean she had suffered objective economic harm. The court held that the plaintiff's subjective belief as to the value of the item did not constitute a cognizable injury absent some objective standard:

> Shaulis attempts to reframe her injury as a loss of the benefit of the bargain, contending that the "Compare At" price tag was a false representation that the sweater was of "high quality." But this reformulation is fundamentally no different than her "induced purchase" theory of injury because Shaulis does not explain how

4

> the sweater was not of "high quality" in any objective way. As the SJC explained in Iannacchino, a plaintiff's "bare assertion" that a product is deficient in some way is "conclusory and can be subjective" and thus "does not suffice to state a viable claim." Instead, claims of injury premised on "overpayment" for a product, or a loss of the benefit of the bargain, require an objective measure against which the plaintiff's allegations may be evaluated.

Shaulis, 865 F.3d at 12 (quoting Iannacchino, 888 N.E.2d at 888); see also Ferreira v. Sterling Jewelers, Inc., 130 F. Supp. 3d 471, 479–80 (D. Mass. 2015) (rejecting claimed premium price theory where the plaintiff offered only conclusory allegations and her own subjective view that she was misled into paying more for an emerald she believed was a natural untreated gemstone).

Here, as in Shaulis, Slawsby fails to identify any objective basis for her claim that the heavy metals and BPA in the pet food are excessive or unsafe. The FDA standards indicate otherwise.

> [N]ot only have Massachusetts courts declined to find injury under Chapter 93A where the plaintiff relies entirely on her subjective belief as to the value received, but federal courts also have routinely rejected claims of injury under Chapter 93A that were not grounded in any objective measure.

Shaulis, 865 F.3d at 13.

Additionally, there is no allegation that Slawsby is still in possession of the allegedly deficient dog food. She purchased the food, she fed her dog, the food is gone, and the dog is apparently okay (and fed). Slawsby received the benefit of her bargain and cannot use hindsight to re-bargain the exchange. See Rule v. Fort Dodge Animal Health, Inc., 604 F. Supp. 2d 288, 304 (D. Mass. 2009) (determining that the plaintiff had "received the full benefit of the bargain she anticipated" when she purchased heartworm prevention medicine because her dog remained free from heartworm for promised period and neither she nor dog suffered adverse effects); Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc., 840 N.E.2d 526, 528, 534–535 (Mass. 2006) (deciding there was no cognizable injury from illegal provisions in damage waiver in rental agreement because the plaintiffs had already returned their rental car and had not been involved in a collision during rental period).

The plaintiff's pleading effectively seeks strict liability for the mere presence of the substances. But strict liability is not the applicable rule in the factual circumstances pled.

Consequently, Slawsby's Chapter 93A claim fails. For substantially the same reasons, her remaining, similar fraud-related claims likewise fail. See, e.g., Shaulis, 865 F.3d at 15 (fraudulent misrepresentation).

B.   Counts VI–VIII

Slawsby's remaining claims can be summarily resolved.

Claim VI alleging breach of an express warranty is dismissed for failure to identify a particular affirmation of fact or promise of a specific result that became part of the basis of bargain (e.g., an absence of the heavy metals or BPA about which she now complains). See Mass. Gen. Laws ch. 106, § 2-313. Further, even if the challenged packaging claims could be construed as express warranties, Slawsby has not plausibly alleged a breach.

Claim VII alleging breach of the implied warranty of merchantability likewise fails. The allegations do not plausibly allege that the dog food was not fit for its ordinary purpose[3] or that any supposed unfitness gave rise to an injury against which the warranty was designed to guard. Further, the plaintiff does not plausibly allege that the dog food did not actually conform to its labels because the labels did not contain any promises or affirmations of fact as to the absence of heavy metals or BPA. Indeed, some of the complained-of label statements amount to no more than subjective sales talk, or puffery, rather than promises or factual affirmations.

The final claim, unjust enrichment, is also dismissed. Slawsby has failed to allege facts that would demonstrate she did not receive what she paid for or that Champion retained a benefit that

---

[3] For example, Slawsby does not plead a threshold level for heavy metals and/or BPA, which, if surpassed, would render the pet food no longer of merchantable quality.

6

would be inequitable for it to retain. See, e.g., Mulder v. Kohl's Dept. Stores, Inc., No. 15-11377-FDS, 2016 WL 393215, at *8 (D. Mass. Feb. 1, 2016).

### III. Conclusion

For the foregoing reasons, the defendants' Motion to Dismiss Second Amended Class Action Complaint (dkt. no. 31) is GRANTED. The action is dismissed.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge